IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34359-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JERRY DALE HUNTOON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Jerry Dale Huntoon appeals his conviction for

felony driving under the influence (DUI). He argues the trial court erred twice: first,

when it denied his pretrial motion to suppress; and second, when it instructed the jury it

need not be unanimous as to which alternative means for felony DUI had been proved,

provided each juror finds one of the alternative means proved beyond a reasonable doubt.

Mr. Huntoon also argues in a statement of additional grounds for review (SAG)

that: (1) his sentence exceeds the statutory maximum, (2) the State did not present

adequate proof of prior convictions at sentencing, (3) trial counsel was ineffective for not

showing the video recording of his traffic stop and arrest, and (4) his offender score was

improperly calculated with out-of-state DUI convictions. We agree that Mr. Huntoon's

sentence exceeds the statutory maximum and remand for the trial court to either amend the community custody term or resentence Mr. Huntoon. In all other respects, we affirm.

FACTS

*Factual background*

On September 4, 2014, around 1:00 a.m., Trooper Jason Bart of the Washington State Patrol observed a truck coming toward him traveling over the posted speed limit of 30 m.p.h. Trooper Bart used his radar gun and determined the truck was traveling 41 to 42 m.p.h. He followed the truck.

The truck made a left turn and Trooper Bart activated his emergency lights. The truck continued one block and then pulled over near a house. Despite Trooper Bart's warnings to remain in the truck, the driver, later identified as Mr. Huntoon, got out of the truck and placed his keys on top of a tool chest in the bed of the truck. Mr. Huntoon told Trooper Bart that he lived at the house where he had stopped.

Trooper Bart noticed that Mr. Huntoon's eyes were bloodshot and watery, his face was flushed and had a stunned or intoxicated expression. Trooper Bart was aware from many prior DUI arrests that these were typical indicators of alcohol consumption.

The two spoke briefly outside the truck. Trooper Bart smelled intoxicating liquor coming from Mr. Huntoon. Mr. Huntoon told Trooper Bart he had had two drinks.

2

Trooper Bart asked Mr. Huntoon if he would perform field sobriety tests and take a portable breath test. Mr. Huntoon declined. Trooper Bart commented, "'You had two drinks and you're not willing to show you're sober?'" Clerk's Papers (CP) at 29. Mr. Huntoon shook his head. Trooper Bart then arrested Mr. Huntoon for suspicion of DUI and took him to a facility where Mr. Huntoon could provide breath samples. An hour after he parked his truck, Mr. Huntoon gave breath samples registering blood alcohol content of 0.157 and 0.156.

*Procedural history*

The State charged Mr. Huntoon with violation of ignition interlock requirement, and with first degree driving while license suspended or revoked. The State also charged Mr. Huntoon with felony DUI by the alternative means of: (1) having a blood or breath alcohol concentration of 0.08 or higher (per se), or (2) while under the influence of or affected by intoxicating liquor or any drug (affected by).

Mr. Huntoon moved the court for a hearing on his motions pursuant to CrR 3.5 and CrR 3.6. His CrR 3.6 motion challenged only probable cause to arrest. Trooper Bart testified at an evidentiary hearing and the video recording of Mr. Huntoon's arrest was played. Mr. Huntoon's counsel agreed to show the video for purposes of the hearing, but

3

No. 34359-6-III
*State v. Huntoon*

noted a forthcoming objection to the jury seeing the video. At the conclusion of the

hearing, the trial court ruled on the motions, and for the suppression motion stated:

> THE COURT: The Court had an opportunity to hear the testimony, obviously watch the video that was done.
>
> I would agree that in order to find probable cause, the Court has to look at the totality and the facts and circumstances that were known to the officer at the time of the arrest, that a reasonably cautious person to believe an offense was committed.
>
> In looking over the testimony that the trooper gave, the trooper noted that he was speeding 40 in a 30. That is a violation of the traffic laws. So based on that and the officer had cause to stop him for the violation of the speeding. The trooper noted that he failed to stop quickly, and that he actually made a turn, failed to follow directions by not remaining in the truck, the odor of alcohol, the flush face, the bloodshot watery eyes, the refusal to do the [field sobriety tests], and the admission to two drinks, obviously with his training and experience looking at the totality of the circumstances, is there enough at this time to determine there's probable cause with the totality of the circumstances? It doesn't have to be bad driving or sloppy driving. It's was there a violation of the traffic laws.
>
> . . . So at this time, the Court would have to find that there's probable cause for the arrest based on the totality of the circumstances.

Report of Proceedings (RP) at 54-55. Mr. Huntoon subsequently pleaded guilty to a

violation of ignition interlock requirement and to first degree driving while license

suspended or revoked.

Mr. Huntoon brought several motions to exclude evidence, including the video of

his arrest. The State stipulated to not showing the video to the jury. Mr. Huntoon

stipulated to having four or more qualifying offenses.

4

The parties presented their cases and the trial court instructed the jury. The trial court gave the following to-convict instruction:

> To convict the defendant of the crime of felony driving while under the influence, each of the following three elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about September 4, 2014, the defendant drove a motor vehicle in the State of Washington;
>
> (2) That the defendant at the time of driving a motor vehicle
>
> (a) was under the influence of or affected by intoxicating liquor[1] or
>
> (b) had sufficient alcohol in his body to have an alcohol concentration of 0.08 or higher within two hours after driving as shown by an accurate and reliable test of the defendant's breath and
>
> (3) That the defendant has four or more prior offenses within ten years.

CP at 65.

The jury found Mr. Huntoon guilty of felony DUI. At sentencing, the State offered Mr. Huntoon's Michigan driving record and certified docket documents as proof of his prior convictions for DUI, which the trial court scrutinized in the record before accepting. Mr. Huntoon objected, arguing that the State did not provide a certified copy of the judgment and sentence for each conviction. Eventually, Mr. Huntoon stipulated that he

---

[1] The State withdrew the "or any drug" language that appeared in its amended information.

was the same person as the person mentioned in the documents and that the State's proof was sufficient.

Next, Mr. Huntoon challenged the inclusion of his Michigan DUI convictions, arguing that they were not comparable to the Washington equivalent. The trial court disagreed and found that they were legally comparable despite allowing the State to prove blood alcohol concentration for a per se DUI via urine testing.

The trial court sentenced Mr. Huntoon to 60 months' confinement and 12 months' community custody. The judgment and sentence contained a *Brooks*[2] notation that read, "combined term of confinement and community custody for any particular offense cannot exceed the statutory maximum. RCW 9.94A.701." CP at 90. Mr. Huntoon timely appealed.

## ANALYSIS

MOTION TO SUPPRESS

Mr. Huntoon contends the trial court erred in denying his motion to suppress. He contends Trooper Bart lacked probable cause to arrest him for DUI. The trial court did not enter written findings of fact and conclusions of law pertaining to Mr. Huntoon's denied motion.

---

[2] *In re Pers. Restraint of Brooks*, 166 Wn.2d 664, 674, 211 P.3d 1023 (2009).

6

This court reviews a trial court's denial of a suppression motion to determine

whether substantial evidence supports the trial court's challenged findings of fact and, if

so, whether the findings support the trial court's conclusions of law. *State v. Radka*, 120

Wn. App. 43, 47, 83 P.3d 1038 (2004). This court reviews conclusions of law de novo.

*Id.* If a trial court did not enter written findings and conclusions after the hearing as

required by CrR 3.6(b), the court's oral ruling may still provide sufficient information for

review. *Id.* at 48.

A.  *Probable cause*

Mr. Huntoon does not challenge the trial court's oral findings, only the conclusion

of law that Trooper Bart had probable cause to arrest him. Whether probable cause exists

is a legal question we review de novo. *State v. Grande*, 164 Wn.2d 135, 140, 187 P.3d

248 (2008). "Probable cause exists where the facts and circumstances within the arresting

officer's knowledge and of which the officer has reasonably trustworthy information are

sufficient to warrant a person of reasonable caution in a belief that an offense has been

committed." *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986). Probable

cause requires more than "[a] bare suspicion of criminal activity." *Id.* However, it does

not require facts that would establish guilt beyond a reasonable doubt. *State v. Conner*,

58 Wn. App. 90, 98, 791 P.2d 261 (1990). The probable cause determination "rest[s] on

7

the totality of facts and circumstances within the officer's knowledge at the time of the arrest." *State v. Fricks*, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979).

The totality of the undisputed facts and circumstances known to Trooper Bart at the time of arrest include the following. It was very late at night and Mr. Huntoon's vehicle was the only one on the road. Mr. Huntoon was traveling 42 m.p.h. in a 30 m.p.h. zone. Once stopped, Mr. Huntoon disobeyed commands to stay in his truck. Trooper Bart saw that Mr. Huntoon's face was flushed with an intoxicated expression and that his eyes were watery and bloodshot. When the two began speaking to each other, Trooper Bart noticed the smell of intoxicants coming from Mr. Huntoon. Mr. Huntoon admitted he had two beers that night. Despite admitting to only two beers, Mr. Huntoon declined to do field sobriety tests or take a portable breath test to confirm his sobriety.

Mr. Huntoon argues that alternative explanations could satisfy many or all of these facts individually. But Trooper Bart needed only probable cause to suspect a crime had been committed, not certainty. The totality of the circumstances was sufficient to warrant a person of reasonable caution in believing that Mr. Huntoon had been driving while affected by intoxicants. The trial court did not err in concluding that Trooper Bart had probable cause to arrest Mr. Huntoon for DUI.

B.      *Pretext*

Mr. Huntoon argues for the first time on appeal that the traffic stop was pretextual.

Mr. Huntoon did not offer this argument to the trial court in his suppression motion and,

he does not attempt to argue or show with citation to authority that the error is manifest.

RAP 2.5(a). However, because of constitutional implications, courts have accepted

review of a new pretext theory in favor of suppression when a defendant brought a

suppression motion below. *See State v. Gallo*, 20 Wn. App. 717, 724, 582 P.2d 558

(1978).

The argument still fails because Trooper Bart determined that Mr. Huntoon was

driving substantially above the speed limit and stopped him for that violation. When an

actual and legitimate reason exists for a traffic stop, and the officer consciously stops a

driver for that reason, it is irrelevant that the officer may have also been motivated to

investigate a different offense. *State v. Arreola*, 176 Wn.2d 284, 300, 290 P.3d 983

(2012).

ALTERNATIVE MEANS AND JURY UNANIMITY

Mr. Huntoon next contends the trial court violated his right to a unanimous verdict

when it instructed the jury that it need not be unanimous on the two alternate means

charged, provided that each juror was convinced beyond a reasonable doubt that the State

9

had proved one of the means. Mr. Huntoon argues that because substantial evidence does not support each alternative means and there is no express jury unanimity, reversal and remand is required. We disagree, substantial evidence does support each alternative means.

Criminal defendants in Washington have a right to a unanimous jury verdict. CONST. art. I, § 21; *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). "The threshold test governing whether unanimity is required on an underlying means of committing a crime is whether sufficient evidence exists to support each of the alternative means presented to the jury." *Ortega-Martinez*, 124 Wn.2d at 707. Jury unanimity is not required if substantial evidence supports each alternative means. *State v. Kitchen*, 110 Wn.2d 403, 410, 756 P.2d 105 (1988). The evidence is sufficient if "'after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt.'" *Ortega-Martinez*, 124 Wn.2d at 708 (quoting *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990)). This issue may be raised for the first time on appeal. RAP 2.5(a); *State v. Handyside*, 42 Wn. App. 412, 415, 711 P.2d 379 (1985).

10

A recent Washington Supreme Court case discusses the unanimity issue presented here in the context of a DUI conviction. *State v. Sandholm*, 184 Wn.2d 726, 364 P.3d 87 (2015). The *Sandholm* court abrogated a prior case to the extent the prior case held that the various affected by prongs of DUI provided alternative means. *Id.* at 736 (abrogating *State v. Franco*, 96 Wn.2d 816, 639 P.2d 1320 (1982)). However, Mr. Huntoon's case does not involve various affected by means; rather, it involves a per se means and an affected by means. RCW 46.61.502. Driving with a blood alcohol concentration of at least 0.08 and driving while affected by intoxicants describe two different criminal acts, and a violation of the per se prong is not necessarily a violation of the affected by prong. Because *Sandholm* does not control, we address the unanimity issue.

The State presented substantial evidence to support the per se means and the affected by means. The State presented evidence that Mr. Huntoon's blood alcohol level was twice the legal limit of 0.08. The State also presented circumstantial evidence that Mr. Huntoon's ability to drive was lessened by any appreciable degree. Specifically, the State's evidence showed that on exiting his truck, Mr. Huntoon smelled of intoxicants, had a flushed face, and bloodshot watery eyes. In addition, Mr. Huntoon refused to perform field sobriety tests. A jury could have inferred that Mr. Huntoon refused because he believed he was affected by alcohol. Considering the circumstantial evidence as a

11

whole, a jury could have found beyond a reasonable doubt that Mr. Huntoon drove his truck while affected by alcohol to any appreciable degree. Because sufficient evidence supports each means, a unanimity instruction was not required.

SAG ISSUE I: SENTENCING: EXCEEDS THE STATUTORY MAXIMUM

Mr. Huntoon next argues the trial court sentenced him to a term of confinement in excess of the statutory maximum when it sentenced him to 60 months of confinement and 12 months of community custody and included a *Brooks* notation. We agree that the sentence exceeded the then statutory maximum for this crime.

A defendant may challenge a sentencing error for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). A defendant's sentence cannot exceed the statutory maximum term for the class of crime for which the offender was convicted. RCW 9A.20.021(1). Terms of confinement and community custody are both included in the calculation of the statutory maximum term, and the combination of the two cannot exceed the statutory maximum. RCW 9.94A.505(5); *State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012). *Brooks* notations no longer comply with statutory sentencing requirements. *Boyd*, 174 Wn.2d at 472. The trial court must reduce the amount of community custody in order to avoid a sentence in excess of the statutory maximum. *Id.* at 473.

Mr. Huntoon was arrested on September 4, 2014, for DUI. The jury found him

guilty of felony DUI on January 28, 2016, and the trial court sentenced him on March 18,

2016. At the time of the offense, the conviction, and the sentence, felony DUI was a class

C felony.[3] The statutory maximum for a class C felony is five years. RCW

9A.20.021(1)(c). Mr. Huntoon's combined sentence amounts to six years. The remedy is

to remand for the trial court to either amend the community custody term or resentence

Mr. Huntoon consistent with RCW 9.94A.701(9).

SAG ISSUE II: SENTENCING: PROOF OF PRIOR CONVICTIONS

Mr. Huntoon next contends that the State did not meet its burden of proof in

proving his prior convictions beyond a reasonable doubt at sentencing. We disagree with

Mr. Huntoon's argument.

"[T]he best method of proving a prior conviction is by the production of a certified

copy of the judgment, but 'other comparable documents of record or transcripts of prior

proceedings' are admissible to establish criminal history." *In re Pers. Restraint of

Adolph*, 170 Wn.2d 556, 568, 243 P.3d 540 (2010) (citing *State v. Ford*, 137 Wn.2d 472,

480, 973 P.2d 452 (1999)). The State's burden of proving the conviction is a

---

[3] On March 31, 2016, the legislature amended RCW 46.61.502 to make felony
DUI a class B felony, effective June 9, 2016. LAWS OF 2016, ch. 87, § 1.

preponderance of the evidence, and that burden is "not overly difficult to meet" and evidence that bears some "minimum indicia of reliability" will suffice. *Adolph*, 170 Wn.2d at 569.

The State relied on stipulations to prove some convictions, certified copies of the judgment for some convictions, and certified docket texts for earlier, out-of-state convictions. The sentencing transcript shows that the trial court carefully read into the record and reviewed all of the submissions by the State to ensure that the documents were reliable. Mr. Huntoon stipulated that the prior Michigan judgments were sufficient proof that he had committed the Michigan offenses and that the only issue was whether the offenses were comparable. Given the stipulation, which appears to be reasonable given the State's proof, Mr. Huntoon is precluded from now arguing that the State's proof was insufficient. *State v. Huff*, 119 Wn. App. 367, 372-73, 80 P.3d 633 (2003).

SAG ISSUE III: INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Huntoon next contends that his trial counsel rendered ineffective assistance of counsel when counsel failed to present to the jury the video recording of his arrest. He argues that during voir dire, potential jurors stated they would like to see physical manifestations of impairment, and the video would help convince the jury that he was not impaired.

The Sixth Amendment to the United States Constitution gives a defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). The claim is reviewed de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To establish ineffective assistance of counsel, a defendant must prove the following two-pronged test:

(1) [D]efense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). There is a strong presumption that counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011). To rebut this presumption, the defendant bears the burden of establishing that no conceivable legitimate tactic exists to explain counsel's performance. *Id.*

Here, legitimate trial tactics explain the decision not to introduce the video. Mr. Huntoon's counsel was concerned that a video of Mr. Huntoon not immediately responding to the police lights, ignoring instructions to stay in the truck, and later being

15

handcuffed and arrested would be more prejudicial to his case than helpful. Mr. Huntoon's counsel even made a pretrial objection to prevent the jury from seeing the video. The State stipulated that it would not show the video to the jury to avoid prejudice. Defense counsel was justified in preventing the jury from seeing the video for these reasons.

SAG ISSUE IV: OFFENDER SCORE CALCULATION: OUT-OF-STATE CONVICTIONS

Mr. Huntoon next contends the trial court erred in calculating his offender score by using out-of-state convictions for DUI.

This court reviews a superior court's offender score calculation and the trial court's classification of an out-of-state conviction de novo. *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003); *State v. Labarbera*, 128 Wn. App. 343, 348, 115 P.3d 1038 (2005).

When sentencing a criminal defendant, a trial court determines the standard sentencing range by finding the intersection of the current offense's "seriousness level" and the defendant's offender score on the sentencing grid. RCW 9.94A.530(1). The offender score measures a defendant's criminal history and the sentencing court calculates it by totaling the defendant's applicable prior convictions. *Ford*, 137 Wn.2d at 479.

16

If a conviction is from another jurisdiction, the State must prove that the conviction would be comparable under Washington law. *Id.* at 480. In determining whether the conviction is comparable, the sentencing court first determines whether the conviction is legally comparable—that is, whether the elements of the out-of-state offense are substantially similar to the elements of the Washington offense. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007). The elements of the out-of-state offense must be compared to the elements of the Washington offense in effect when the foreign crime was committed. *State v. Morley*, 134 Wn.2d 588, 597, 952 P.2d 167 (1998). If the elements of the out-of-state offense are broader than the elements of the Washington offense, the conviction is not legally comparable. In that event, the sentencing court must then determine whether the conviction is factually comparable—that is, whether the conduct underlying the out-of-state offense would have violated the comparable Washington statute. *Thiefault*, 160 Wn.2d at 415. If the conviction is either legally or factually comparable, the out-of-state conviction can be included in the offender score. *Id.*

*Legally comparable*

Prior to 1998, the elements of DUI in Washington were: (1) the accused drove a vehicle in the state while (2)(a) having an alcohol concentration of 0.10 or higher within

17

two hours after driving as shown by breath or blood testing, or (b) while under the influence of or affected by intoxicating liquor or any drug, or (c) while under the combined influence of any drug and intoxicating liquor. Former RCW 46.61.502(1) (1994); *see also State v. Rivera-Santos*, 166 Wn.2d 722, 728, 214 P.3d 130 (2009) (interpreting newer but substantially similar version of statute). In 1998, the legislature lowered the legal limit to a blood alcohol concentration of 0.08. LAWS OF 1998, ch. 213, § 3. The Washington statute limits proof of alcohol concentration to blood or breath testing.

The trial court calculated Mr. Huntoon's offender score by including his three 1995 Michigan operating while intoxicated (OWI) misdemeanor convictions and his 1997 and 2000 Michigan OWI felony convictions. During those years, Michigan's OWI statute prohibited:

> (1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if either of the following applies:
> (a) The person is under the influence of intoxicating liquor or a controlled substance, or a combination of intoxicating liquor and a controlled substance.
> (b) The person has an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, *or per 67 milliliters of urine.*

18

S.B. 631, 87th Leg., Reg. Sess. (Mich. 1994) (emphasis added); Former MCL 257.625(1) (1995); Former MCL 257.625(1) (1997); Former MCL 257.625(1) (1999).

Mr. Huntoon argues the Washington and Michigan statutes are not legally comparable because the latter allows proof of alcohol content by the additional means of a urine test. Mr. Huntoon's argument misses the point of legal comparability. The point of legal comparability is to determine whether a violation of the out-of-state statute would necessarily be a violation of the comparable Washington statute. This is done by comparing the elements of the out-of-state statute with the elements of the Washington statute. Here, it is obvious that the former Michigan OWI statute proscribes driving with an alcohol content of 0.10 blood alcohol content or greater. Thus, a person whose conduct violated the Michigan statute also would have violated the Washington statute. For this reason, the Michigan OWI statute and the Washington DUI statute are legally comparable. We conclude the trial court did not err by counting the Michigan OWI convictions as prior convictions for calculating Mr. Huntoon's offender score.

No. 34359-6-III
*State v. Huntoon*

Affirmed, but remand to either strike or amend the community custody term.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Korsmo, J.

Siddoway, J.

20